1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    HIREN JAGDISH PATEL,              Case No. 25-cv-07667-WHO

             Plaintiff,
8

9        v.                           ORDER GRANTING APPLICATION
                                       FOR TEMPORARY RESTRAINING
10   POLLY KAISER, et al.,             ORDER AND ORDERING
                                       DEFENDANTS TO SHOW CAUSE
             Defendants.
11                                     Re: Dkt. Nos. 2, 12

12          Before me is plaintiff Hiren Jagdish Patel's Motion for a Temporary Restraining Order

13   ("TRO") and Petition for Preliminary Injunction ("the Petition").[1]  *See* Motion ("Mot.") [Dkt. No.

14   2], Petition ("Pet.") [Dkt. No. 1].  Patel seeks injunctive relief precluding re-arrest by the U.S.

15   Department of Homeland Security ("USDHS") or Immigration and Customs Enforcement ("ICE")

16   absent notice and a hearing before a neutral adjudicator wherein defendants must establish (1) the

17   foreseeability of his removal and (2) factors that would support re-detention prior to his removal.

18

19          Patel does not argue that his removal would be unlawful—only that any detention before

20   he has received due process would be.  For the reasons explained below, Patel's motion for a TRO

21   is GRANTED.  Further, defendants are ORDERED to show cause why a preliminary injunction

22   should not issue.[2]  Defendants may not arrest, detain, or remove Patel without notice and a hearing

23

24   _____

25   [1] Although Patel filed the motion *ex parte*, defendants in this case have since been served and
     counsel for defendants has entered an appearance.  *See* Dkt. Nos. 6, 8, 9, 10.  All parties were
26   represented at the September 22, 2025, hearing I held on the motion.  *See* Dkt. No. 14.

27   [2] At the hearing on the TRO Motion, parties appeared in agreement that I address only that motion
     at this juncture instead of resolving it alongside the Petition.  As I explain below, parties may
28   further brief the Petition in advance of the hearing on the Petition.  To the extent that parties wish
     to stipulate to a briefing and hearing schedule different from that included at the end of this Order,

United States District Court
Northern District of California

before a neutral adjudicator.

## BACKGROUND

Patel was born in India and has lived in the United States for 25 years.  Pet. ¶ 1.  He first entered the United States on an H1-B visa in 1999.  On July 5, 2000, he was convicted of California Penal Code section 484 for petty theft, a conviction that he later expunged.  Amended Shastri Declaration ("Shastri Decl.") [Dkt.. No. 15-2] ¶ 2–3.  In April 2004, Patel adjusted his status to that of a lawful permanent resident following a petition filed by his U.S. citizen wife.  *Id.* at ¶ 2.

In April 2007, Patel was convicted of California Penal Code sections 664, 288 (a) and 2(b), for attempted lewd acts and attempted distribution of harmful material to a minor by use of an internet chatroom.  Pet. ¶ 33; Dkt. No. 11 at 13.  He was sentenced to four months in county jail and three years of probation.  Shastri Decl. ¶ 4.  Because of the conviction, Patel lost his lawful permanent resident status.  He is actively appealing these convictions on grounds of legal error. Pet. ¶ 35.

ICE detained Patel on March 24, 2012, and issued a Notice to Appear.  Shastri Decl. ¶ 5. Because he had been convicted of an aggravated felony (the 2007 conviction), ICE detained him and charged him with removal pursuant to the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii).  Pet. ¶ 34.  He filed an application to waive removal and applied to readjust his status.  Shastri Decl. ¶ 5.  On June 8, 2017, an immigration judge granted both.  *Id.*  USDHS appealed the decision, and the Board of Immigration Appeals ("BIA") reversed.  *Id.*  Patel thereafter appealed the BIA's decision to the Ninth Circuit, which concluded that it lacked jurisdiction to consider the appeal.  *Id.*  He filed a motion to reopen before the BIA, which failed, as did his subsequent appeal of the BIA's decision.  *Id.*

they are welcome to do so.

From 2012–2017, ICE released Patel on an Order of Supervision ("OSUP"), requiring him to wear an ankle monitor throughout the pendency of his proceedings. Shastri Decl. ¶ 6. In 2017, ICE terminated the OSUP and ankle monitor requirement as a result of Patel's medically-related requests and instead issued a bond on his release. *Id.* In December 2024, ICE cancelled the bond and placed him back on an OSUP, although without the additional burden of an ankle monitor. *Id.* He has remained in compliance with all conditions of his OSUPs over the years. Pet. ¶ 38.

As a condition of his OSUP, Patel is required to appear at frequent ICE appointments. Because of his medical needs related to a recent triple bypass surgery, he has needed to reschedule several of his appointments over the last year.[3] Shastri Decl. ¶¶ 7–10. Recently, however, Patel contends that he has developed a heightened concern that he will be arrested and re-detained after he appears for an ICE appointment without notice or the opportunity to appear before a neutral arbiter, in violation of government regulations requiring such process.[4] Shastri Decl. ¶ 13; Pet. ¶ 52. On September 2, 2025, counsel for Patel contacted the Assistant United States Attorney to gain assurance that he would not be arrested and re-detained in this manner, but no assurance was provided. Shastri Decl. ¶ 14.

On September 9, 2025, Patel filed a petition for writ of habeas corpus and an *ex parte* Motion for a TRO. *See* Pet. [Dkt. No. 1]; Mot. [Dkt. No. 2]. In the Petition, Patel raises four causes of action: (1) Procedural Due Process pursuant to the Fifth Amendment; (2) Substantive Due Process pursuant to the Fifth Amendment; (3) Unlawful Re-detention pursuant to 8 C.F.R. §§ 241.13(i)(2), 1231(a)(6); and (4) Violation of the INA and Applicable Regulations. Pet. ¶¶ 82–97. Patel named Acting Field Office Director of San Francisco Office of ICE Detention and Removal

---

[3] In his Reply brief, Patel explains that he also needed to reschedule a recent ICE appointment because of an unexpected gall bladder infection and surgery. *See* Dkt. No. 13 at n.2.

[4] *See* Pet. ¶¶ 40–50, citing various news sources and recent cases supporting such a fear.

Polly Kaiser,[5] Acting Director of ICE Todd Lyons, Secretary of the USDHS Kristi Noem, and the Attorney General of the United States Pam Bondi as Respondents/Defendants in his petition (together, "defendants").  Pet. 1.  That same day, I ordered Patel to serve the defendants and ordered defendants to file a response.  *See* Order Regarding the Motion for TRO [Dkt. No. 5].  I additionally set a hearing on the motion and prohibited defendants from removing Patel until after a ruling on the motion issued.  *Id.*  Patel served defendants and defendants filed a response.  Dkt. Nos. 6, 11; *see* Opposition to the Motion for a TRO ("Oppo") [Dkt. No. 11].  Patel also filed a Motion for Leave to File a Reply and attached the proposed Reply.  ("Reply") [Dkt. No. 12].  I GRANT the Motion for Leave to File a Reply and likewise consider its contents in deciding the merits of this Order.

I held a hearing on the motion on September 22, 2025.  Dkt. No. 14.  All parties were represented at the hearing.

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just

---

[5] Since that time, Sergio Albarran has become Acting Field Office Director.  Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as a named defendant.

possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation omitted).

The party seeking the injunction bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor.  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised."  *All. for Wild Rockies*, 632 F.3d at 1131.

## DISCUSSION

Defendants contend that: (1) I may not consider Patel's request for habeas relief because Patel is not "in physical custody;" (2) I lack jurisdiction over Patel's claims because he seeks to challenge a removal order; and (3) Patel fails the meet the *Winter* factors on the facts presented in any event.  Oppo. 7–20.  Each contention is wrong.

The facts and posture of this case are closely aligned to those in a case filed in the Central District of California.  *See Sun v. Santacruz Jr. et al.*, No. 5:25-cv-02198-JLS-JC, 2025 WL

2730235 (C.D. Cal. Aug. 26, 2025).  In that case, the Honorable Josephine Staton concluded on very similar facts that: (1) plaintiff asserted a cognizable habeas claim; (2) plaintiff's petition and application for a TRO were independent of her removal order; and that (3) plaintiff made a sufficient showing to demonstrate each of the *Winter* factors.  *Sun*, 2025 WL 2730235 at *2–*8.  The court issued the TRO.[6]  When presented with the opportunity at the hearing to distinguish this case from *Sun*, counsel for defendants could not.  I will follow Judge Staton's thoughtful opinion and conclude that there are no jurisdictional issues present in the current posture of the case and that Patel has made a sufficient showing for each of the *Winter* factors.

### I.    Jurisdiction

#### A.    Habeas Relief

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Supreme Court has "very liberally construed the 'in custody' requirement."  *Maleng v. Cook*, 490 U.S. 488, 492 (1989).  This liberal construction provides that "[a] person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'"  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (J. Orrick) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

Defendants first argue that I lack jurisdiction over Patel's case because he "does not seek a remedy that sounds in habeas."  Oppo. 7–8.  I conclude that Patel is subject to several "restraints not shared by the public generally" and is "in custody" according to the meaning of Section 2241.  *Id.*  Upon his release from physical immigration detention in 2012, Patel was placed on an OSUP

---

[6] As of the date of filing, the hearing on the preliminary injunction at issue in *Sun* is still pending. *See Sun v. Santacruz Jr. et. al.*, No. 5:25-cv-02198-JLS-JC, Dkt. No. 15 (Order Granting Joint Stipulation to (1) Modify Briefing and Hearing Schedule and (2) Extend Temporary Restraining Order).

United States District Court
Northern District of California

and required to comport with conditions not common to the public.  At times, Patel has been made to wear an ankle monitor so that ICE could track his every location.  These conditions "significantly confine and restrain [Patel's] freedom" and squarely place him "in custody" for the purpose of federal habeas corpus jurisdiction.  *Jones*, 371 U.S. at 243.

Given Patel's present custodial arrangement, he may bring a habeas challenge to "attack future confinement and obtain future releases."  *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).  Here, Patel challenges a future unlawful re-detention prior to removal.  I may therefore consider his petition for habeas corpus relief.  *See, e.g. Sun*, 2025 WL 2730235 at *3 (collecting Ninth Circuit district court cases deciding the same.).

### B.   INA Jurisdictional Preclusions

Defendants also assert that I lack jurisdiction over this action pursuant to several provisions of the INA, precluding district court review of immigration proceedings.  Oppo. 8–11.  They are mistaken.

Pursuant to Section 1252(g) of the INA, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  This section is "narrow[]" and "applies only to three discrete actions that the Attorney General may take."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).  These three actions are the decision to "commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g).  Defendants argue only that "the Ninth Circuit [has] consistently held that claims seeking a stay of removal –even temporarily to assert other claims to relief—are barred by Section 1252(g)."  Oppo. 9 (*citing Rauda v. Jennings*, 55 F. 4th 773 (9th Cir. 2022)).  Patel could not be more clear that he is not contesting his removal with this action—nor does he seek a stay of that removal.  *See, e.g.*, Reply at 7 ("Petitioner is not contesting his underlying removal . . . ."), 8 (noting that Patel seeks a "pre-deprivation hearing

7

before this Court or other neutral adjudicator prior to any re-detention."). Neither his Petition nor the instant motion are directed to his final order of removal. Thus, I have jurisdiction to review and consider his claims. *See Sun*, 2025 WL 2730235 at *4.

Likewise, defendants' arguments that Section 1252(a)(5) and Section 1252(b)(9) preclude district court jurisdiction over Patel's claims falls flat. Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 152(a)(5). Relatedly, Section 1252(b)(9) states that

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under [the] subchapter shall be available only in judicial review of a final order under [the] section . . . [N]o court shall have jurisdiction, by habeas corpus . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Critically, "claims that are independent of or collateral to the removal process do not fall within" the scope of Section 1252(b)(9). *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (citations omitted). "[A]s a general rule, noncitizens 'may continue to bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus.'" *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005 (W.D. Wash. 2019) (quoting *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011)). For the same reasons that Section 1252(g) does not preclude jurisdiction, neither do Sections 1252(a)(5) and 1252(b)(9).

## II.    *Winter* Factors

As for the merits of Patel's motion, I conclude that each of the *Winter* factors tips in his favor, and issue a TRO.

### A. Likelihood of Success

Pursuant to the Due Process Clause, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. art. V. "Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted).  This protection extends to non-citizens.  *See Walters v. Reno*, 145 F.3d 1032, 1037 (9th Cir. 1998) (noting that it is "well established that aliens facing deportation from this country are entitled to due process rights under the Fifth Amendment.").  The Due Process Clause usually "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Courts analyze a procedural due process claim under the *Mathews v. Eldridge* framework. 424 U.S. 319 (1976).  That framework requires a court to consider:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  Each favors Patel.

Patel's private interest will undoubtedly be affected by a failure to provide him with notice and the opportunity to appear before a neutral arbiter prior to his detainment.  As I have held elsewhere, "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond." *Ortega*, 415 F. Supp. 3d at 969.  There is no question that Patel has a profound liberty interest, heightened by his numerous health issues and family care responsibilities.

The risk of an erroneous deprivation of Patel's liberty interest is high.  Defendants argue that Patel is not entitled to a due process or pre-deprivation hearing, and that there "is no risk of erroneous detention because Petitioner is subject to a final removal order . . . ."  Oppo. 21–23. They further seem to argue that Patel has had *enough* process—as if his previous cases before an IJ, BIA, and Ninth Circuit mean that now, as an individual subject to an OSUP, he is owed no

process before detention for some indeterminate amount of time. Oppo. 23. That is not what the Constitution says. That is not what the Due Process Clause requires. *See, e.g.*, *Zinerman*, 494 U.S. at 127.

Finally, defendants' interest in re-incarcerating Patel prior to a pre-detention hearing is low. "Civil immigration detention, which is nonpunitive in purpose and effect, is justified when a noncitizen presents a risk of flight or danger to the community." *Sun*, 2025 WL 2730235 at *6 (citing *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (cleaned up). As in Sun, "[n]either risk is present here." *Id.* That is not to say that Patel's previous convictions, especially his 2007 conviction, are not serious. They are. However, Patel has not been accused of any crimes since then, and he has been in full compliance with ICE's custodial requirements ever since he lost status as a lawful permanent resident. There is no showing that Patel is a current "risk of flight or danger to the community." And I see no administrative burden on providing Patel a pre-detention hearing. "In immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted).[7]

In sum, the *Mathews* factors each weigh strongly in favor of Patel. His private liberty interest is substantial, as is the risk of erroneous deprivation. On the other hand, the government's interest in the burden of additional procedures is low. Patel at least raises "serious questions going to the merits" of his procedural due process claim and thus satisfies the first *Winter* factor. *All. for the Wild Rockies*, 632 F.3d at 1135.

---

[7] It seems that the crux of defendants' opposition to Patel's motion (and more broadly, to his Petition) lies in their administrative concerns with regard to the impact that such a requirement would have on the immigration removal system and not, as is required here, with regard to Patel's individual circumstance. If I grant Patel the relief he seeks, they write: "[i]t would require ICE and the Executive Office for Immigration Review to set up a novel administrative process for Petitioner who—for all intents and purposes—represents a large portion of the final order alien population." Oppo. 24. That following the Constitution is an inconvenience to the government is not an available factor for me to consider when deciding whether to grant an individual petitioner injunctive relief.

**B. Irreprerable Harm**

Patel also satisfies the second *Winter* factor. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (internal quotation marks and citations omitted). As I have already explained, defendants' detention of Patel without a pre-deprivation hearing likely constitutes a deprivation of his constitutional rights. Further, it is reasonable to fear that Patel's ongoing medical issues could worsen should he be detained. That alone is sufficient to tip this *Winter* factor in Patel's favor. Defendants have been unable to provide *any* assurances that ICE will not re-arrest and re-detain Patel at his upcoming ICE appointment absent any injunction, which also establishes a sufficient risk of irreparable harm. In light of the government actions cited by Patel in his Petition (with no evidence to the contrary presented by defendants), the possibility of injury to Patel is far from "remote and speculative" as defendants argue. Oppo. 25 (citing *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988)). Patel satisfies the second *Winter* factor.

**C. Balance of Equities and the Public Interest**

When a TRO is sought against the government, the final two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A "plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). That is because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government . . . cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id.* (internal quotation marks and citations omitted).

Defendants urge that I consider that "[t]he public interest in enforcement of United States immigration laws is significant." I do. And as several of my colleagues have held, the public also has a "strong interest in upholding procedural protections against unlawful detention . . . and the

United States District Court
Northern District of California

Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Sun*, 2025 WL 2730235, at *7 (quoting *Jorge M.F. v. Wilkinson*, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (J. Tigar)). Because I have already concluded that Patel has satisfied the first *Winter* factor, I likewise conclude that he satisfies the final two.

### CONCLUSION

For the reasons explained above, the Motion for a Temporary Restraining Order is GRANTED. Defendants are ENJOINED AND RESTRAINED from arresting, detaining, or removing Patel without notice and without a hearing. This Order shall remain in effect **until October 23, 2025**, absent extension pursuant to Federal Rule of Civil Procedure 65(b)(2). Defendants may file a response to the Petition no later than **October 17, 2025**. Patel may reply no later than **October 20, 2025**. A hearing to address why the preliminary injunction should not issue is scheduled for **October 22, 2025, at 2:00 p.m.**

**IT IS SO ORDERED.**

Dated: October 9, 2025



William H. Orrick
United States District Judge